166 P.3d 140

**Burt WEBB and Michele Webb, husband and wife, Plaintiffs–Appellees–Cross–Appellants,**

v.

**OMNI BLOCK, INC., a Nevada corporation, Defendant–Appellant–Cross–Appellee.**

**No. 1 CA–CV 06–0200.**

Court of Appeals of Arizona, Division 1, Department D.

Sept. 6, 2007.

Reconsideration Denied Oct. 19, 2007.

Hebert Schenk PC, by Joseph A. Schenk, Phoenix, Attorneys for Appellees–Cross–Appellants.

Broening Oberg Woods & Wilson PC, by James R. Broening, Lori B. Kirsch–Goodwin, Alicyn M. Freeman, Phoenix, Attorneys for Appellant–Cross–Appellee.

## OPINION

WEISBERG, Judge.

¶1 Omni Block, Inc. ("Omni") appeals from the trial court's award of attorneys' fees to Burt and Michele Webb and denial of its request for attorneys' fees and sanctions. The Webbs cross-appeal, arguing that the trial court erroneously admitted testimony from Omni's expert witness. For the reasons set forth below, we grant the cross-appeal and reverse the judgment.

### FACTS[1] AND PROCEDURAL BACKGROUND

¶2 Omni is the supplier of an insulated masonry building system that incorporates a specialized type of concrete block and "Omni Bond," a surface bond material that is applied to the surface of the block. The Webbs sued Omni and others when the Omni Bond that had been applied to the block used to construct the Webbs' new home failed. The Webbs asserted claims for breach of contract and negligence against Omni, ProWall Building Products, Inc., manufacturer of Omni Bond, and Petrini's Custom Stucco Inc., applier of the Omni Bond.[2] The Webbs settled with Petrini's Custom Stucco prior to trial, and Russell Petrini was named as a nonparty at fault along with architect Rich Bistany, and George Mendoza, who had applied stucco over the Omni Bond material.

¶3 During the trial, Omni presented the testimony of an expert witness, Michael Solender, who opined about the Webbs' responsibilities as homeowners who act as their own general contractors for the construction of their own home, and the relative responsibilities of the defendants and alleged non-parties at fault. Following trial, the jury returned a verdict in favor of the Webbs for $53,331.79 but found Omni liable for only six percent of those total damages. The jury apportioned the remaining fault among the Webbs, Pro-Wall, Bistany, and Petrini, and assigned zero liability to Mendoza.

¶4 Both the Webbs and Omni requested attorneys' fees after trial based on Arizona Revised Statutes ("A.R.S.") section 12–341.01

---

1. "[W]e view the facts and evidence in the light most favorable to the party against whom [ ] judgment was granted and draw all reasonable inferences in favor of that party." *Ness v. Western Sec. Life Ins. Co.*, 174 Ariz. 497, 500, 851 P.2d 122, 125 (App.1992).

2. The Webbs' contract claims against ProWall Building Products, Inc. were either dismissed or resolved on summary judgment prior to trial. The only claim asserted against ProWall at trial was negligence.

(2003). Additionally, Omni requested sanctions against the Webbs pursuant to Rule 68, Arizona Rules of Civil Procedure.[3] The trial court granted the Webbs' attorneys' fees request and denied Omni's requests. The trial court entered judgment in favor of the Webbs against Omni for $3,199.91 in damages, $2,757.05 in costs, and $72,546.20 in attorneys' fees. Omni timely appealed,[4] and the Webbs filed a timely cross-appeal. *See* ARCAP 9(a). We have jurisdiction pursuant to A.R.S. § 12–2101(B) (2003).

## ISSUES

¶ 5 The Webbs raise two issues in their cross-appeal: (1) whether Omni's expert witness, Michael Solender, was properly qualified to testify and (2) if so, whether it was an abuse of discretion for the trial court to permit Solender to opine as to the percentage of fault attributable to the parties and non-parties involved.

## STANDARD OF REVIEW

¶ 6 The admissibility of expert testimony is within the sound discretion of the trial court and will not be overturned on appeal absent an abuse of discretion. *John C. Lincoln Hosp. & Health Corp. v. Maricopa County*, 208 Ariz. 532, 543, ¶ 33, 96 P.3d 530, 541 (App.2004). An abuse of discretion exists when the court commits an error of law in reaching a discretionary conclusion. *Torres for and on Behalf of Torres v. N. Am. Van Lines, Inc.*, 135 Ariz. 35, 40, 658 P.2d 835, 840 (App.1982).

## DISCUSSION

¶ 7 The Webbs contend that the trial court erroneously admitted the testimony of Omni's expert, Solender. Arizona Rule of Evidence ("Rule") 702 provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." The Webbs first argue unpersuasively that Solender was not a qualified expert.

## Qualified Expert Witness

¶ 8 The test for whether a person is an expert is whether a jury can receive help on a particular subject from the witness. *Bliss v. Treece*, 134 Ariz. 516, 518–19, 658 P.2d 169, 171–72 (1983). The witness must possess "expertise" that "is applicable to the subject about which he intends to testify," and he must have training or experience that "qualif[ies] him to render opinions which will be useful to the trier of fact." *Lay v. City of Mesa*, 168 Ariz. 552, 554, 815 P.2d 921, 923 (App.1991).

¶ 9 Solender testified that he had been "in the construction business" for sixty-three years. He received his contractor's license in California in 1957, after having trained as an engineer in an apprenticeship program in England and working as a superintendent there. In California, he built "houses and shopping centers and so forth," and he testified that, in the 1970s, his "firm was listed as one of the top ten builders in California." He began testifying in various cases as an expert witness in 1979. Such cases have "run[ ] the entire gamut from— buildings to small jobs," and he has "been retained in a great many states as an expert in construction."

¶ 10 The Webbs contend that Solender's experience and training were not sufficient to qualify him as an expert in matters beyond the responsibilities of general contractors and that he should not have been allowed to testify about the duties and responsibilities of the other defendants and non-parties at fault. But, "[t]he degree of qualification, goes to the weight given the

---

3. Rule 68 provides for sanctions against a party who obtains a judgment less than an offer of judgment made by the losing party.

4. *Omni's* appeal raises three issues: (1) whether the Webbs were entitled to attorneys' fees under A.R.S. § 12–341.01; (2) whether it was error to award the Webbs all of their requested attorneys' fees; and (3) whether it was error to deny Omni's request for attorneys' fees and sanctions against the Webbs. However, in light of our resolution of the cross-appeal, we do not address the issues raised in Omni's appeal.

testimony, not its admissibility." *State v. Davolt,* 207 Ariz. 191, 210, ¶ 70, 84 P.3d 456, 475 (2004). We, therefore, find no error in the trial court's ruling that Solender was qualified to give expert testimony on the duties and responsibilities of a general contractor and those who work closely with the contractor for the construction of a home.

**Opinion Regarding Ultimate Issue**

¶ 11 Next, the Webbs argue that, even if qualified as an expert, Solender should not have been allowed to give his opinion about the percentages of fault applicable to the parties and non-parties in this case. The Webbs contend that the issue of percentage of fault is not a proper subject of expert opinion and that Solender's testimony therefore invaded the province of the jury. Omni responds that Rule 704[5] permits expert witnesses to testify concerning the ultimate issues of a case, and that Solender's testimony was admissible because it was helpful to the jury under Rule 702. *See Dunham v. Pima County,* 161 Ariz. 304, 307, 778 P.2d 1200, 1203 (1989) (helpful testimony that otherwise embraces an ultimate issue is admissible).

¶ 12 At first blush, the language of Rule 704 appears to support Omni's argument because it permits opinion testimony that encompasses an ultimate issue. Rule 704 was enacted to abolish the common law ultimate issue rule, which prevented opinion testimony that embraced an ultimate issue that was to be decided by the trier of fact. *See, e.g., Duncan v. Mack,* 59 Ariz. 36, 43, 122 P.2d 215, 219 (1942). But, while Rule 704 makes such opinion testimony admissible, it does not do so without limit. As indicated by the comment to Rule 704, opinion testimony on an ultimate issue must still be helpful to the trier of fact and cannot be couched in legal conclusions that simply opine "how juries should decide cases." Thus, our inquiry is whether Solender's testimony constituted an impermissible legal conclusion.

¶ 13 Opinion testimony by an expert witness that encompasses an ultimate issue is generally admissible when it alludes to an inference that the trier of fact should make, or uses a term that has both a lay factual meaning and legal meaning, and it is clear that the witness is using only the factual term. *See* 3 *Handbook of Fed. Evidence* § 704:1 (6th ed.2007); *see also United States v. Levine,* 180 F.3d 869, 871–72 (7th Cir.1999) (use of the word "forged" has an established lay usage; that the crime is called forgery does not close the subject to inquiry); *United States v. Johnson,* 637 F.2d 1224, 1246–47 (9th Cir.1980) (doctor allowed to testify that patient suffered "serious bodily injury"); *cf. Montgomery v. Aetna Cas. & Sur. Co.,* 898 F.2d 1537, 1541 (11th Cir.1990) (testimony that insurer violated fiduciary duty was improper legal conclusion). Additionally, such opinion testimony is admissible when helpful to the jury under Rule 702. *See United States v. Allen,* 10 F.3d 405, 414–15 (7th Cir.1993) (relationship between opinion and ultimate issue is important in determining helpfulness of testimony); *see also, United States v. Perkins,* 470 F.3d 150, 159–60 (4th Cir.2006) (civil action alleging excessive force, testimony regarding defendant's reasonableness of use of force did not impermissibly state a legal conclusion because it did not address objective reasonableness; instead the testimony focused on the witness' personal assessments of the defendant's conduct); *Maffei v. N. Ins. Co. of N.Y.,* 12 F.3d 892, 897 (9th Cir.1993) (testimony properly allowed because opinions were helpful to determine whether defendant was involved in the conspiracy).

¶ 14 In other circumstances, testimony regarding ultimate issues has been excluded because it told the jury how to decide the case or was otherwise unhelpful, and therefore excludable under Rule 702. *See Owen v. Kerr–McGee Corp.,* 698 F.2d 236, 240 (5th Cir.1983). Such testimony is inadmissible because it provides no information to the trier of fact except what the verdict should read. 4 *Weinstein's Federal Evidence* 704.04[2][a], at 704–14 (2d ed.2007). As *McCormick on Evidence* teaches:

---

**5.** Rule 704 states: "Testimony in the form of an opinion or inference otherwise admissible is not

objectionable because it embraces an ultimate issue to be decided by the trier of fact."

Undoubtedly some highly opinionated statements by the witness amount to nothing more than an expression of his general belief as to how the case should be decided or the amount of damages which would be just. All courts exclude such extreme, conclusory expressions. There is no necessity for this kind of evidence; its receipt would suggest that the judge and jury may shift responsibility for the decision to the witness. In any event, the opinion is worthless to the trier of fact.

1 *McCormick on Evidence* § 12, at 60 (6th ed.1999) (footnote omitted).

¶ 15 In *Jamas v. Krpan*, this court explained when expert testimony was properly excluded because it invaded the province of the jury. 116 Ariz. 216, 568 P.2d 1114 (App. 1977). *Jamas* was a malpractice case where the expert was permitted to opine that the defendant's conduct was negligent, but was not permitted to testify that the conduct amounted to gross negligence. *Id.* at 217, 568 P.2d at 1115. On appeal, the court concluded that,

Although a jury may not be competent to determine medical malpractice without the aid of expert testimony that the physician had deviated from the accepted standard of care, it does not necessarily follow that the jury, having been informed of community standards, is incompetent to judge the nature or gravity of the deviation. . . .

*Id.* Thus, the expert's opinion was both unhelpful to the jury and expressed a legal conclusion that was the jury's responsibility.

¶ 16 Other examples can be found in the opinions of other jurisdictions. In *Steffensen v. Smith's Management Corp.*, the plaintiff attempted to have her expert witness allocate the actual percentage of negligence between the two defendants. 862 P.2d 1342, 1347 (Utah 1993). The court recognized that although Rule 704 permits expert testimony regarding an ultimate issue, not all opinions addressing ultimate issues are admissible. *Id.* Therefore, the court concluded that "[q]uestions which merely authorize the witness to tell the jury what result to reach are not permitted" under Rule 704 because such testimony is solely the jury's responsibility. *Id.* at 1347–48.

¶ 17 Using similar reasoning, other courts have concluded that expert opinions addressing ultimate issues are excluded when couched as legal conclusions because such beliefs by expert witnesses "tend to blur the separate and distinct responsibilities of the judge, jury, and witness[,]" and create the danger that jurors may turn to the expert for guidance on applicable law rather than the judge. *Id.; see United States v. Scop*, 846 F.2d 135, 140 (2d Cir.1988) ("The problem with testimony containing a legal conclusion is in conveying the witness' unexpressed, and perhaps erroneous, legal standards to the jury.") (citation omitted), *rev'd in part on reh'g on other ground*, 856 F.2d 5 (2d Cir. 1988); *see also Hygh v. Jacobs*, 961 F.2d 359 (2d Cir.1992) (expert opinion that defendant's conduct was "deadly force" and "unjustified" was inadmissible because it merely expressed a legal conclusion and told jury what result to reach); *Haney v. Mizell Memorial Hospital*, 744 F.2d 1467 (11th Cir.1984) (expert not permitted to use the word "negligent" but instead was permitted to opine that defendant's conduct fell below the standard of care); *Strong v. E.I. DuPont de Nemours Co., Inc.*, 667 F.2d 682 (8th Cir.1981) (expert testimony regarding lack of adequate warnings for product defect claim was properly excluded because the questions were too broad and not phrased in terms of adequately explored legal criteria).

¶ 18 In light of the foregoing discussion, we examine Solender's testimony. Solender testified about the roles and responsibilities of the parties involved in the construction of the house, the application of the Omni Bond product, and the stucco. In the midst of his testimony, Solender attributed specific percentages of liability for the parties involved. Based on his calculations, he attributed thirty-five percent of the liability to the Webbs as the contractors for the house. The architect, the supervisor of the Omni Bond application, and the supervisor of the stucco application were attributed twenty-five, ten and thirty percentages of fault respectively. Solender attributed no fault to Omni, who called him as a witness.

¶ 19 The Webbs argue that such testimony was inadmissible because it specifically told the jury how it should decide the case. Omni responds that Solender's testimony merely assisted the jury in knowing what percentage of duty was borne by each party. Omni contends that the fact that the testimony came in the form of percentages is irrelevant to the determination of helpfulness to the jury, and in fact assisted Solender in articulating the duties shared by the multiple parties. Omni, however, fails to acknowledge the limitation Rule 704 places on expert testimony: that an expert cannot testify as to how the jury should decide the case.

¶ 20 We therefore hold that Solender's opinion apportioning of percentages of fault to the parties and non-parties constituted inadmissible legal conclusions under Rule 704 because he thereby told the jury how to decide the case. Once Solender testified to the duties and responsibilities of the parties involved, the distribution of fault among the parties responsible was the jury's responsibility. Accordingly, we hold that the admission of Solender's opinion allocating actual percentages of fault to all the parties involved was impermissible under Rule 704.

¶ 21 Omni nevertheless argues that if Solender's opinion as to the percentages of liability was wrongfully allowed, such error was harmless, non-reversible error. *See Creach v. Angulo,* 189 Ariz. 212, 214–15, 941 P.2d 224, 226–27 (1997) (reversible error is substantial error that may have prejudiced the complaining party). Omni contends that the jury could decide the issues on its own, and in fact, the liability determinations assigned by the jury do not reflect the percent-

ages that Solender assigned during his testimony.[6] We, however, are not persuaded.

¶ 22 First, we repeat that Solender's opinion clearly invaded the province of the jury. Second, the actual percentages of liability assigned by the jury did not diverge to such a degree that we could conclusively say that the jury was not affected by Solender's testimony. We, therefore, conclude that the admission of Solender's testimony constituted reversible error. *See Lee Moor Contracting Co. v. Blanton,* 49 Ariz. 130, 145, 65 P.2d 35, 41 (1937) (expert's testimony that defendant's speed was prudent was erroneously admitted because it invaded the province of the jury, and therefore constituted reversible error).

## CONCLUSION

¶ 23 For the reasons discussed above, we reverse the judgment and remand for further proceedings consistent with this decision. As the prevailing party, we award the Webbs their reasonable attorneys' fees and costs on appeal in accordance with A.R.S. § 12–341.01(A), and subject to their compliance with Arizona Rule of Civil Appellate Procedure 21(c).

CONCURRING: LAWRENCE F. WINTHROP, Presiding Judge, and SUSAN A. EHRLICH, Judge.

---

6. Solender opined that the Webbs were 35% liable, Bistany was 25% liable, Petrini was 10% liable, Mendoza was 30% liable, and Omni was 0% liable. The jury found the Webbs 30% liable, Bistany 27% liable, Petrini 22% liable, Mendoza 0% liable and Omni 6% liable.